UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FREIDA M. BUSH,<br><br>       Plaintiff,<br><br> v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>       Defendant. | Case No. C09-5371RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for April 23, 2010 |

  Plaintiff, Freida M. Bush, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review.

### FACTUAL AND PROCEDURAL HISTORY

  Plaintiff currently is 51 years old.[1] Tr. 27. She has one year of college education and past relevant work experience as an assistant hotel manager, a cashier, a cook, a housekeeper, and a laundry worker. Tr. 24, 162, 168, 170, 760.

  Plaintiff filed an application for disability insurance and another for SSI benefits on July

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION - 1

21, 2006, and November 28, 2006, respectively, alleging disability as of December 1, 2001, due to a chronic bilateral Achilles tendinitis disorder in her feet, chronic sinusitis and chronic asthma. Tr. 16, 59, 62-64, 161.  Her applications were denied initially and on reconsideration. Tr. 16, 27-28.  A hearing was held before an administrative law judge ("ALJ") on September 11, 2008, at which plaintiff, represented by counsel, appeared and testified. Tr. 757-773.

On November 19, 2008, the ALJ issued a decision, in which he determined plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of lumbar degenerative disc disease, right knee chondromalacia, bilateral chronic Achilles tendinosis status post multiple surgeries and obesity;

(3) at step three, none of plaintiff's impairments met or medically equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) after step three but before step four, plaintiff had the residual functional capacity to perform sedentary work, with certain additional non-exertional limitations[3];

(5) at step four, plaintiff was unable to perform her past relevant work; and

(6) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 16-26.  Plaintiff's request for review was denied by the Appeals Council on April 21, 2009, making the ALJ's decision the Commissioner's final decision. Tr. 7; 20 C.F.R. § 404.981, § 416.1481.

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

[3] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b).  "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION - 2

On June 22, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1). The administrative record was filed with the Court on September 1, 2009. (Dkt. #7). Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for further administrative proceedings for the following reasons:

(a) the ALJ erred in evaluating the medical evidence in the record;

(b) the ALJ erred in assessing plaintiff's residual functional capacity; and

(c) the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

For the reasons set forth below, the undersigned disagrees the ALJ erred in determining plaintiff to be not disabled, and therefore recommends the ALJ's decision be affirmed.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where

REPORT AND RECOMMENDATION - 3

the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

REPORT AND RECOMMENDATION - 4

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In late January 2003, Melvin D. Levine, M.D., an examining physician and orthopedic surgeon, opined that "[a]t this point in time" plaintiff would be "unable to be doing prolonged activity on her feet," and that she was "limited to somewhat sedentary activities because she" was "unable to squat or do deep knee bends." Tr. 276. In late May 2003, Dr. Levine stated that plaintiff's "restrictions at this time" were "for sedentary type work," and that she was "unable", and thus "should avoid[,] prolonged walking[, running], squatting, or standing type of activities." Tr. 269. In early December 2004, another examining physician and orthopedic surgeon, William Furrer, Jr., M.D., concluded she was "capable of gainful employment on a reasonably continuous basis at a sedentary *and light and some medium* level." Tr. 388 (emphasis added).

In early March 2006, plaintiff's treating physician, Robert E. Carlson, M.D., stated that he thought plaintiff "certainly could work in a sedentary capacity," but that "any job that" had "her perform regular walking and standing would be contraindicated based on the ongoing tendinosis problem." Tr. 491. In late June 2006, Dr. Carlson stated plaintiff was "medically

REPORT AND RECOMMENDATION - 5

stable and certainly" could "participate with the vocational counselor with regard to reasonable return to work in sedentary capacity." Tr. 580.  Also in late June 2006, David C. Thut, M.D., a third examining physician opined as follows:

> . . . There are restrictions that prevent the claimant from returning to full duty work.  I feel she could go back to a sedentary position where she would not need to walk longer than an hour per day, on an intermittent basis.  She should have limitations in terms of lifting and pushing of 25 pounds as well.

Tr. 535-37.  In a "DOCTOR'S ESTIMATE OF PHYSICAL CAPACITIES" form Dr. Thut also completed at the time, he found that plaintiff was capable of:

- standing and walking for a total of a half hour each at a time, and for a total of one hour each in an entire eight-hour day;
- lifting and carrying up to 10 pounds frequently and 25 pounds occasionally;
- using her hands for repetitive grasping, pushing and pulling and handling; and
- using her left, but not right, foot for repetitive movements in operating foot controls.

Tr. 540.  In addition, Dr. Thut indicted that plaintiff had no restrictions with respect to activities involving heights, moving machinery, driving, or exposure to marked changes in temperature and humidity.  Id.

In late August 2006, Dr. Carlson stated he agreed "with the impairment ratings as well as the general restrictions" set forth "in her [independent medical] physical capacity evaluation" – apparently in reference to that performed by Dr. Thut in late June 2006 – and "with the one hour walking restriction as it" related "to any work activities . . . for an eight-hour workday." Tr. 527-40, 579.  In early November 2006, a non-examining, consulting physician, Gene Profant, M.D., completed a physical residual functional capacity assessment form, in which he found plaintiff to be "capable of performing sedentary work [with certain] additional postural [and environmental] limitations." Tr. 443-50.  In early December 2006, Dr. Carlson thought it was "suitable for her to

REPORT AND RECOMMENDATION - 6

work in a sitting only position which primarily would include desk work." Tr. 575.

In early March 2008, one of plaintiff's other treatment providers, Jon Mortensen, PA-C, completed a state agency physical evaluation form, in which he too found plaintiff to be capable of performing sedentary work, and noted more specifically that she would have difficulty with prolonged positioning. Tr. 604-07.  In late April 2008, Dr. Carlson stated he "certainly could allow her to be in a sitting type position fitting a *light category* of work." Tr. 555 (emphasis added).  In late May 2008, Dr. Carlson provided his last opinion regarding plaintiff's limitations and ability to work, in which he concluded her "orthopedic issues" limited her "from gainfully returning to employment." Tr. 554.

The ALJ addressed the above medical opinion source evidence in the record in relevant part as follows:

> As for the opinion evidence, I give great weight to the January, 2007; April, 2008; and June, 2008 medical opinions of treating orthopedist Robert Carlson, M.D., because he treated the claimant from 2001 to 2008 and the opinions are consistent with his objective findings.  He stated in January, 2007 that even though the claimant had chronic pain from the right Achilles tendinopathy, she was not "totally disabled by whatever criteria are used" . . .  And even after she underwent right knee surgery in September, 2007, Dr. Carlson concluded in April, 2008 that "not much has changed" regarding her knee and that she could work in a "sitting type position."  In June, 2008, he stated the claimant is not a candidate for knee replacement because intraoperative findings show only mild chondromalcia.  At each examination in March, April, May, and June, 2008, he found some tenderness on palpation and at the ends of the range of motion.  Otherwise, he found that the claimant was in no apparent distress; that her knee range of motion was 0 to 120 degrees (normal); that the Lachman test was normal; and that there was no warmth and no visible or palpable effusions . . .
>
> However, I give little weight to Dr. Carlson's May, 2008 opinion that the claimant's orthopedic issues (primarily her knee) precluded her from returning to gainful employment.  This opinion is inconsistent with his own contemporaneous opinions in April and June, 2008 and with his examination findings from March to June, 2008 (above).  This is clearly an accommodation to the claimant for purposes of this litigation. . . .
>
> I also give great weight to the medical opinions of orthopedists David Thut,

REPORT AND RECOMMENDATION - 7

> M.D., William Furrer, M.D., and Melvin Levine, M.D., because they are specialists, the opinions are consistent with each other, and each physician reviewed the medical history and made objective findings.  Dr. Levine conducted an independent medical examination and concluded, in May, 2003, that the claimant was only limited to sedentary work due to her left Achilles injury . . .  Dr. Furrer diagnosed bilateral, chronic Achilles tendonitis and concluded in November, 2004 that she could work at the sedentary to light level . . .  And in June, 2006, Dr. Thut conducted an independent examination and likewise concluded that the bilateral tendonitis limits the claimant only to sedentary work . . .
>
> I give significant weight to the opinions of primary care provider, Jon Mortensen, PA-C, and state agency physician, Gene Profant, M.D., because the opinions are consistent with the objective evidence and the medical opinions in the record.  Dr. Profant conducted an objective review of the medical record in November, 2006 and concluded that the claimant could work at the sedentary level . . .  Mr. Mortonsen came to the same conclusion in March, 2008 after treating the claimant consistently since December, 2008 . . .

Tr. 23-24.

Plaintiff argues the ALJ erred in not giving weight to Dr. Thut's late June 2006 opinion that she would be limited to walking for a total of no more than one hour per workday, or to Dr. Carlson's late August 2006 statement that he agreed with the one-hour walking restriction.  If that restriction on walking is given proper credit as significant probative evidence plaintiff goes on to argue, she would be precluded from performing sedentary work.  For the reasons set forth below, however, the undersigned finds these arguments to be without merit.

The requirements of sedentary work are described in relevant part as follows:

> The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if *walking <u>and</u> standing* are required occasionally and other sedentary criteria are met. *"Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday.* Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional,"

REPORT AND RECOMMENDATION - 8

> such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 *3 (emphasis added).  Plaintiff thus is correct in stating that in order to be able to perform the full range of sedentary work, she must be able to walk and stand for as much as two hours in an eight-hour day.  The record, however, does not support plaintiff's assertion that the opinions of Dr. Carlson and Dr. Thut preclude her from being able to perform such work.

In regard to Dr. Thut's late June 2006 opinion, it is true in his narrative evaluation report that he stated he felt plaintiff "could go back to a sedentary position where she could not need to walk longer than an hour per day." Tr. 535-37.  But as noted above, Dr. Thut also indicated in a separate form he completed at the same time that plaintiff was capable of standing and walking for one hour each in an eight-hour day. Tr. 540.  Nor is the narrative evaluation report Dr. Thut issued necessarily inconsistent with the standing and walking opinion he provided in the separate form he completed, as there is no indication in the evaluation report that plaintiff would not be able to stand for up to an hour per day as well.

In addition, the fact that Dr. Carlson stated he agreed with Dr. Thut's one-hour restriction on walking does not mean he disagreed with Dr. Thut's opinion that plaintiff also could stand for up to one hour in an eight-hour day.  That is, just because Dr. Carlson did not mention Dr. Thut's opinion regarding plaintiff's ability to stand, does not mean he disagreed with it.  Also in regard to Dr. Carlson, as discussed above, on several other occasions he opined that plaintiff was able to perform at least sedentary work, without further restrictions on her ability to do so. See Tr. 575, 580, 555.  Nor has plaintiff challenged the ALJ's rejection of Dr. Carlson's final opinion that she was incapable of returning to gainful employment.

Lastly, also as discussed above, the medical evidence in the record overall – including the

REPORT AND RECOMMENDATION - 9

opinions of two orthopedic surgeons,[4] plaintiff's other primary treatment provider and a non-examining consulting physician – supports the ALJ's determination that plaintiff was capable of performing sedentary work. See Tr. 269, 276, 388, 443-50, 604-07. Accordingly, the substantial evidence in the record supports the ALJ's determination at step two of the sequential disability evaluation process that plaintiff was capable of performing sedentary work. The undersigned, therefore, finds no error on the part of the ALJ here.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

As noted above, the ALJ assessed plaintiff with residual functional capacity to perform

---

[4] See Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (more deference is given to opinion of specialist about medical issues related to his or her area of specialty).

REPORT AND RECOMMENDATION - 10

sedentary work, with the additional non-exertional limitations that she could only occasionally stoop, kneel, crouch, crawl, and climb stairs, and never balance on or climb ladders or scaffolds. Tr. 21. Plaintiff argues that in light of Dr. Thut's late June 2006 and Dr. Carlson's late August 2006 opinions, substantial evidence does not support the ALJ's RFC assessment. However, for all of the reasons set forth above, the ALJ did not err in finding plaintiff capable of performing sedentary work with the above additional non-exertional limitations. Accordingly, the ALJ also did not err in assessing that residual functional capacity for the same reasons.

III.    The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000). The Grids may be used if they "completely and accurately represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in the original). That is, the claimant "must be able to perform the full range of jobs in a given category." Id. (emphasis in the original).

If a claimant suffers from "significant non-exertional impairments," on the other hand, reliance on the Grids is not appropriate. Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids). Here, the ALJ found that because plaintiff had the residual functional capacity to perform sedentary work – and because "the additional limitations" he found had "little or no effect on the occupational base of unskilled sedentary work" – a finding

REPORT AND RECOMMENDATION - 11

of "not-disabled" was "appropriate under the framework of the" Grids. Tr. 25; see 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.28, 201.21.

Plaintiff argues such significant non-exertional limitations prevent reliance on the Grids in this case, again because of the late June 2006 and late August 2006 opinions of Dr. Thut and Dr. Carlson. Once more, however, the substantial evidence in the record supports the ALJ's determination that plaintiff was capable of performing sedentary work with the additional non-exertional limitations noted above. Accordingly, the ALJ did not err in relying on the Grids as a framework for finding plaintiff disabled at step five.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 23, 2010**, as noted in the caption.

DATED this 30th day of March, 2010.

/s/ Karen L. Strombom
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12